Arguments not to exceed 15 minutes per side. Mr. Vanderland for the appellates. Good morning. May it please the court, Aaron Vanderland on behalf of the appellants Bertha May Huff and James Harold Huff, I reserve three minutes for rebuttal. As the court is aware this case is about the interception of a pocket dial made by James Harold Huff, otherwise known as Jim Huff, while he was in Italy last October for a conference involving airport operations. At the time Mr. Huff was the chairman of the Kenton County Airport Board. He was attending the conference with the vice chairman of the Kenton County Airport Board, Larry Savage, and both of their wives were also present in Italy with them last October. During the course of this conference Mr. Huff and Mr. Savage had the opportunity to take a break from the proceedings, went outside to a private balcony and started to have a conversation. It initially started off with Mr. Huff trying to call the appellee Carol Spa to confirm a reservation for a dinner that evening. Every member of this panel has read your brief and knows the story, so why don't you launch into your arguments why the district court is wrong to say that there was no reasonable expectation of privacy when you hold a cell phone. I boil it down to that. As we stated in the brief, there are two prongs to this expectation of privacy. One being the subjective expectation of privacy which the district court found that the Huffs had with respect to their conversations. The second component which was the objective expectation of privacy or an expectation of privacy that society is prepared to recognize as reasonable, the district court found that Mr. Huff did not have that type of expectation. He says everyone knows that pocket calls occur, so that's the district court's stance, so we know that too. Since the district court made that decision, the Supreme Court came out in the Raleigh v. California case which dealt with a search incident to a lawful arrest of a cell phone. In that opinion, the Supreme Court wrote that modern cell phones which are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy. A cell phone is a part of one's life now in American society. What's wrong with what the district court did? What's the district court wrong to say? Well, first off, under the Katz test, the Fourth Amendment would not protect someone who knowingly exposes their communications outside the privacy realm. In this case, there was no fact that there was no knowing. The only time that a knowing issue arises is when Mr. Huff discovers that his cell phone was on while he was in his hotel room. It doesn't matter because it's already exposed, so the point is you say, let me help you get quicker to the point. Is the point that all of us forgo our right to privacy when we carry a cell phone? Why not? I think it goes back to the issue of considering this knowing issue, knowing standard. Considering that the court here may have conversations with their law clerks, the fact that someone's cell phone may be on potentially could expose those conversations to others that were not intended to hear those communications. With respect to the Huff's communications in their own hotel bedroom, there are privileges that would protect the disclosure of communications between a doctor, a patient, an attorney, and a client. So I think that's the issue. I think it has to be, you have to take into consideration the content, the location, the persons involved, and the knowledge of the surroundings when you make an analysis as to whether there's an objective expectation of privacy. We believe that society is prepared to recognize that one who carries a cell phone does not forfeit their expectation of privacy. There are ways to keep your cell phone from pocket dialing. Your adversary sums it up, basically, it's your fault. You sum it up as SPA had no right to listen indefinitely. So when, from your point of view, did it stop being your fault, or when presumably SPA was entitled or was not committing any wrongful act by listening for some period of time, but under your theory, how do you define that? Well, I think I agree with what you state, Judge. Early on in the conversation, by her own admission that she said hello at least six times in the first minute, did not hear a response, and was not otherwise engaged in the conversation, it would be, it should become clear that the call was not intended for her, and at that point in time, there is no reason to stay on the line. How does that connect to the reasonable expectation of privacy, though? That would seem to be, it may have been nasty, it may have been unkind, it may have been condemnable or despicable, but how does that relate to his expectation of privacy? Again, with respect to the expectation of privacy, again, outside of the fact that the phone gave access to Ms. SPA to listen to it, there is no evidence anywhere that there was any sort of consent that was given to her, or again, any sort of knowing action that would have allowed her to even listen to this conversation. She was what, in the cat's opinion, described an uninvited ear in this case. With respect to the point as to which... The ear put itself in his phone booth, whereas Ms. SPA did not. Correct. Do you see any difference between the conversation that he was having with Mr. Savage, and then the conversation he was having with his wife? Are there different standards, different considerations there? I don't think there's different standards, but it would become clear as to the issue of interception that the conversations that Mr. Huff was having with his wife had nothing to do with any sort of potential business of the airport, which is what Ms. SPA has argued was the reason why she was listening to the conversations between Mr. Huff and Mr. Savage. At that point in time, again, you have spousal privilege issues. They're in a bedroom. Ms. SPA knew that there were only two in the bedroom. Therefore, I think at that point in time it was clear that there was no reason for her to listen and even go forward to record the conversations that they had while they were in their hotel bedroom. Are you saying that it was not clear before that? You said it was clear during the conversation with his wife. It was clear certainly then. Was it clear before that, or was it not clear before that? In other words, you're making a bigger emphasis right now on the conversation with his wife. There's been some testimony that the reason why she continued to listen while they were in the hotel bedroom was the fact that Mr. Savage may re-enter the picture and there may be conversations involving him. That was not going to occur. With respect to the conversations that he had with Mr. Savage, I think they deserve the same protection because they occurred in private so that nobody else in Italy at least could hear them due to the location and the awareness of the surroundings that Mr. Huff and Mr. Savage recognized before engaging in those conversations. Does Ms. Huff have a greater expectation of privacy since she had nothing to do with the cell phone? Mrs. Huff is I think an innocent victim in this whole thing. I think she does have an expectation of privacy. She was not aware that there had been a prior conversation. She was not aware that Mr. Huff had previously tried to call Ms. Spa. She has kind of been up in all this and only became aware that the cell phone was an issue when Mr. Huff made the comments in the bedroom right before hanging up. We're dealing with an expectation that society is prepared to recognize as reasonable. Both the Supreme Court in Raleigh versus California, I think our brief pointed to the fact that more than 90% of U.S. adults carry a cell phone. I think more than 50% of the people that do have a cell phone have a smart phone which does have these capabilities to potentially pocket dial or inadvertently dial someone that the holder of the cell phone did not intend to dial. There being a smart phone doesn't add very much to pocket dialing, does it? I mean I have a pretty dumb phone that will do it. The evidence is that if you have a smart phone has more ways to protect your cell phone. It's the touch screen technology that does more than buttons maybe. I think it's easier to jostle. I think if you had what they call the old flip phones of the 90s, you'd have to kind of open it up and then engage in pressing of buttons. With the touch screen technology. That's not what Raleigh was about, how much information you could have inside it, not the physical tactile results of it. Correct. I think that's all that I have right now. I'll reserve the rest for rebuttal. Thank you. Counsel, I'll put to you the same thing I did to him. Each side summarizes its argument where you say, it's your fault. And he says, SPA shouldn't listen indefinitely, which in a sort of morality point seems true. So how does the law help us decide between those two? And also Ms. Huff, bring Ms. Huff in. Yes, your honor. I appreciate that. John Allison on behalf of Appellee Carol SPA. I think your argument is exactly right. That the communications at issue, all of them, are not protected by the statute. Reason being, the statute reads that an oral communication is any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation. There's that reasonable expectation prong when Mr. Huff, and this is what the court found dispositive, placed the call. That affirmative act made any expectation that his conversations wouldn't be overheard unreasonable. That is just, and we have to put that in the greater context. Yes, your honor. That his expectation on a balcony, purposely on a balcony in Italy, that's unreasonable to think that that's private from someone back at the home office. And it's because he dialed her, because it can happen. I don't know if it requires that you have to have dialed. It seems to me that usually is the case, but I don't know the technology. If it was stored on your call list, you might actually accidentally hit a seven, and seven means call my secretary. Right, your honor. So I may be overstating it. The fact that his phone made the call to Carol Spaugh's business line, that his phone made the call, whether he intentionally dialed it or inadvertently dialed it. We know he inadvertently dialed it. Let's just go along with that. Okay, or inadvertently dialed it. Well, he did, your honor, try to call her several times just before the pocket dial. But you're correct, your honor. That affirmative act made his expectation that his conversations wouldn't be heard unreasonable. And I think therefore... Is it because, I mean, maybe we really have to define the problem. Is it because his expectation of privacy is unreasonable because he just prior dialed her? As opposed to, it picks up, I think it picks up anybody in your contacts. I think that's right, your honor. So therefore, that causes us to have a different rule. Thou shalt not leave your cell phone on at all or you forego your right to privacy on any conversation of anybody with regard to anyone in your contacts, okay? I think that's right, your honor. I think if your phone makes a call to someone in your contacts because that has happened, you have foregone that reasonable expectation of privacy. Because it has happened to you before? What if it never happened to you before? I think even so... How do we know? Who knows, you know? Well, I think that gets to the subjective argument whether or not you know... That individual ever had a pocket dial. Right. I think what you know about your cell phone gets into the subjective part of the argument, what your expectation might be subjectively as to whether or not you might have a phone that makes a call... But the objective comes from knowing in the world, not having experienced it, from having read that this can happen. I mean, where's the objective come in? I think the objective comes in... Well, I will agree, your honor, or I will state, your honor, that I think that the fact that you have knowledge... And they admit it in this case. Do you have knowledge or we all have knowledge just from the atmosphere? Well, in this particular case, the appellants did testify that they had knowledge that pocket dials occur. My assumption is that most people do have that knowledge because it's happened... Is that their subjective or their objective? I think it's under the objective and the subjective, frankly, but I think it is also under the objective, your honor. And so they have knowledge that pocket dials occur. In this particular case, Mr. Huff had just tried to call Ms. Spall. He didn't take any steps to lock his phone. He could have locked his phone. He could have put it away. He didn't do any of that. And instead, his phone and or he made a call. And because of that, I think that there is no protection under the statute, under the oral communication definition under the statute. Meaning you have no claim against the listener. Meaning you have no claim against the listener. The only claim, right. Correct. Meaning you have no claim against the listener. I also think that Mrs. Huff, to answer your question, your honor, does not have a greater expectation of that her conversations won't be overheard either. Now she may have a greater subjective expectation, but the way the statute reads, it says under circumstances justifying such expectation. And your position has to be that no conversation between two people when the other one might have a cell phone that might have made a pocket dial is objectively reasonable. And isn't that a greater leap? That is when you say it's your fault, it's pretty easy to say that about Mr. Huff. Okay. He just made the call. I mean, he knows about pocket dials and so on. Mrs. Huff is in the bedroom with her husband. Yes, people in society have cell phones, but as a general matter, we don't think they're going to be on transmitting. So is your standard that whenever any person A talks to any person B who might have a cell phone, you have to Well, your honor, I would say I think the district court came to that conclusion, and I think it is the only rational conclusion in that, as the statute says, under circumstances justifying such expectation, the circumstances here are that a call was live and open. That's what the circumstances are. I certainly didn't know that when it started. There's some discussion or discrepancy that I didn't see was factually resolved, and I don't want to get into the timeline because there's different starts and stops, and I fuss about was it 91 minutes, but it's perfectly clear, I would say, tell me if you contradict me, that at the beginning of when he walked into the room, Mrs. Huff had no idea that there was a live call. When he walked into the room, I think that's probably true, your honor. Now at some point, and I think this is unclear, the phone was on the bed, which is how he discovered that the call was going, and discovered it was 129 minutes, and then it kept going for 131 minutes. They were both on the bed at that point. I think that's undeveloped. I don't know when exactly she would have seen the phone, but they're both on the bed. That was the shock period. Right. That's what happened there. There's clearly some period, and there's also some period during which your client was recording it. Yes, your honor. There is also at that point, depending on your definition, greater use of a device, greater intentionality than just listening. Why shouldn't Ms. Huff at least have some recourse to thrash out these facts? This is why, your honor. That's why you have to rely on the no objective at all? Well, the district court relied on that, but I think we can go further. I don't think these were communications that were protected by the statute. However, even if it was an oral communication that was protected by the statute, whether Mrs. Huff, Mr. Huff, Mr. Savage, Mr. Huff, there was no interception. What's illegal under the statute is an interception of an interception. There's no interception here. There is not a lot of case law on interception, and I think that's because not very many people, if anybody, have tried to make a claim that if I call you, you can claim, or I can then claim that you intercepted my call. I think that there's not a lot of case law out there. I would point the court to the Williams case that we cited in our brief. It's an old case, 507 P. 2nd 1339. It's an Oklahoma case from 1973, but in that case, it was in a hotel context, and an operator picked up a call to the operator's phone, and the court went through the analysis of is this an interception? Answer, no, because the call came to that phone. All the person did was pick up and listen, and went through the analysis of whether or not this person was a party to the call, and that gets later into the analysis into the exceptions. I would say, Your Honor, that again, the communications were not protected by the statute, but even if they were, there's no interception here. Your argument is no interception. That argument, if prevails, again, covers everything. Correct, Your Honor. Would it be the same argument if Mr. Huff had knowingly placed the call? Would Mrs. Huff's communications have been intercepted in that sense? No, I think there's no interception if Mr. Huff intentionally or unintentionally places a call, and the recipient simply picks up the call and listens. There's no interception. The case law that talks about interception is where there's a bug placed somewhere to pick up a conversation, or somebody's listening to somebody else's, two other people's wire communication over a phone, and somebody else is listening in. There's no case law out there to support the idea. But it's very interesting to think about whether interception can encompass an obviously unintended call. Does it convert to interception at some point because it wasn't intended for you, and you now know you're listening to a private conversation? Right. Your Honor, I don't think it does. There's no case law out there to support that idea. There's nothing in the statute that would suggest that somehow a conversation could become an interception at some point when it didn't start as an interception. And then again, I think even if you could argue that it was an interception, there's a number of exceptions that apply. For example, the party exception, and the statute specifically reads with respect to whether or not you're a party, that if you are a party, it's not unlawful to intercept a communication, an oral or wire or electronic communication, unless your motive is criminal or tortious. There's no evidence of any sort of motive like that here. So again, I would say the communications aren't protected under the statute, there's no interception, and then a number of different exceptions apply. When she pushes record, doesn't she use a device to make an acquisition of the conversation? Yes, Your Honor, and that's no different than... So I would say two things to that. The communications were oral communications between the parties in Italy. The device that picked up those communications is the phone line, I guess that's not a device, and that when she's recording that, that is not an interception of the oral communication. It's simply enhancing what she's hearing, and that was addressed as well in the Williams case, that old Oklahoma 1973 case where the operator recorded some of the call, and that was held to be acceptable as a party to the call. I'm sorry, Your Honor. I thought it sounded to me like your response to Judge Boggs' question focused on placing it on speaker as opposed to pressing the record button. You said, oh, she enhanced the volume, but he's talking about she's preserving that for some potentially nefarious or maybe lawful use. In all events, doesn't it change things? It does not. If you look at the Oklahoma case that we cited to in our brief, the Williams case, the operator who picked up the call, who was considered not to have intercepted it and was also considered a party, recorded some of that call. And as long as you are not listening... That doesn't affect the analysis. Your point, it does not affect the analysis. I think it does not affect the analysis as long as... Williams' face, Williams doesn't have the Mrs. Huff involved. That is, the guy in Williams, he's the one who made the call. I think that's unclear, actually. I think that's factually unclear, who made the call. But I think the analysis is that either it's not protected by the statute, there's no interception. If there is, she was a party to the call. And under what scant case law there is... How can she be a party to a call that she had nothing to do with and had no idea was going on? Because all she did was pick up the phone and listen. No, no, I'm sorry. You're saying your person, Spa, wasn't... Yes, Your Honor. I thought being a party was protective, so I thought you were saying she wasn't a party. No, I'm sorry, Your Honor. No, I think the oral communications are not protected under the statute. That's argument one. If they are, there was no interception. That's argument two. If they were intercepted, the argument is that the party exception applies, meaning because she picked up the phone when the call came to her business line, she's a party to the call. And anything she does after that is permissible, including recording the call. That's in the Williams case. That's even as... As long as she does not... I was with you up to, at least I understood you up to the point of bringing in Mrs. Huff. She's not a party to Ms. Huff's communications. Well, Mrs. Huff is a party to her communications with Mr. Huff. I'm sorry, Your Honor. Hold to it, that's okay. I'm sorry. Your time's up. My time is up. Thank you, Your Honor. Commander Land, you have your remaining time, three minutes for rebuttal. With respect to this issue of interception, we cited a couple cases in the brief that dealt with interceptions of telephone calls through extension lines. The Watkins case, which is from the early 80s, and then also the Fisher case from just a couple years ago, where employees of entities were engaged in private conversations with others on the telephone. Somebody from their business picked up the line, listened to the call for a while, and then claims were brought afterwards. And in both of those cases, as to the interception issue, the courts found that it was an issue of fact for a jury to decide as to when the listening or inadvertent listening turned into interception in both of those cases. We also cited the body case from the Sixth Circuit from the mid-1980s, where, in that case, the lower court had sui sponte dismissed the claim under the, at that time, the Omnibus Crime Control and Safe Streets Act, but the Sixth Circuit felt that the issues of expectation of privacy were issues for the jury to decide in that case, both as to the subjective and objective prongs of the analysis. So, with respect to that, there are issues of fact that, you know, considering that the discovery that was conducted in this case was abbreviated and done only for the purposes, primarily for the purposes of, at then, the TRO issue that was before the court, we believe that if the court does not grant judgment in favor of the Huffs as to their expectation of privacy, that the matter be remanded for a full discovery on all claims. How would the court grant judgment in your client's favor? I see that's your prayer. Well, the court, if there's... This court? This court. Well, it could be remanded with instructions to enter judgment, find that there was an objective expectation of privacy. The court did grant that there was a subjective expectation of privacy, and based on... If we say we found that there was an expectation, appropriate lawful expectation of privacy, that would find Ms. Spa liable? Well, you'd have to find... Interception was... I think it might be too big of a step. Okay. What were you about to say about interception? Interception, the lower court didn't fully address that element, but that it felt that it believed that the telephone was used to intercept the communications. The lower court just found that there was no oral communications subject to protection under the statute. Okay. Thank you, counsel. That case will be submitted.